Note:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1091, -1192


SMITH & NEPHEW, INC.
and JOHN O. HAYHURST, M.D.,

Plaintiffs-Cross Appellants,

v.

ARTHREX, INC.,

Defendant-Appellant.


John M. Skenyon, Fish & Richardson P.C., of Boston, Massachusetts, argued for plaintiffs-cross appellants.  With him on the brief was Mark J. Hebert.

Charles W. Saber, Dickstein Shapiro LLP, of Washington, DC, argued for defendant-appellant.  With him on the brief were Stephen A. Soffen, Salvatore P. Tamburo, and Megan S. Woodworth.  Of counsel was Kenneth W. Brothers.  Of counsel on the brief were Steven C. Susser, Young & Susser, P.C., of Southfield, Michigan; and Anthony P. Cho, Carlson Gaskey & Olds, P.C., of Birmingham, Michigan.

Appealed from:  United States District Court for the District of Oregon

Judge Michael W. Mosman

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1091,-1192

SMITH & NEPHEW, INC.,
and JOHN O. HAYHURST, M.D.,

Plaintiffs-Cross Appellants,

v.

ARTHREX, INC.,

Defendant-Appellant.

Appeal from the United States District Court for the District of Oregon
in case no. 04-CV-0029, Judge Michael W. Mosman.

_____

DECIDED:  December 2, 2009
_____

Before BRYSON, CLEVENGER, and DYK, <u>Circuit Judges</u>.

PER CURIAM.

Smith & Nephew, Inc., and John O. Hayhurst, M.D., (collectively, "S&N") accuse Arthrex, Inc., of indirectly infringing the seven method claims of Dr. Hayhurst's U.S. Patent No. 5,601,557 ("the '557 patent").  After two jury trials, the district court entered judgment in favor of S&N on a jury verdict of infringement.  Arthrex appeals.  It asserts that the court should not have granted judgment of infringement on the jury's verdict, and that this court should direct the entry of judgment of noninfringement as a matter of law.  In addition, Arthrex argues that the district court erroneously granted summary

judgment in S&N's favor with respect to Arthrex's counterclaims of patent invalidity.  In the alternative, Arthrex argues that it is entitled to a new trial because of trial errors by the district court.  S&N cross-appeals from the district court's denial of its request for supplemental damages.  We affirm in part, reverse in part, and remand.

I

The '557 patent describes methods for placing and securing a suture anchor in a bone.  The suture anchor is used to re-attach damaged tissue, such as a torn ligament, to the bone.  To place the anchor, a surgeon makes a hole in the bone and presses the anchor into the hole.  The anchor has resilient legs that expand to secure the anchor within the hole.  Once the anchor is placed, the surgeon then re-attaches the damaged tissue to the bone using a suture.

II

Both before the district court and on appeal, the parties have focused on the construction of the term "resile."[1]  The district court construed "resile" to mean "to return to or tend to return to a prior or original position in a manner that contributes, at least in part, to the lodging of the member in the hole."  Arthrex asserts that the term "resile" should be construed to require resiliency sufficient to lodge the anchor in the bone.  The proper construction of "resile" is important because it informs the meaning of the critical claim term "lodging," on which Arthrex's appeal largely turns.[2]

---

[1]    The term "resile" appears only in claim 2, but the district court incorporated the requirement of "resiling" into the definition of "member," which is a limitation of all the claims in the patent.  The court's construction of "member" was not appealed.

[2]    S&N argues that Arthrex failed to preserve the claim construction issue it asserts on appeal.  Specifically, S&N argues that Arthrex failed to raise its claim

We previously construed "lodging" in <u>Smith & Nephew, Inc. v. Ethicon, Inc.</u>, 276 F.3d 1304 (Fed. Cir. 2001), another case involving the '557 patent. The central issue in that appeal was what role, if any, a tensioning step or "surgeon's tug" plays in lodging the anchor. While the '557 specification mentions "tension" when discussing how the anchor lodges, we noted that "[t]he '557 patent, its specification, prosecution history, and testimony in the summary judgment proceeding, make clear that the instruction to surgeons to tug on the anchor before using it is a matter of prudent surgical practice, not a limitation . . . ." <u>Id.</u> at 1310. We then upheld the district court's claim construction "with the modification or clarification that [the patent] neither excludes nor requires the step of pulling on the suture after it is inserted."[3] <u>Id.</u> Therefore, because the "surgeon's tug" is not a required step in lodging the anchor, the anchor must lodge by some other mechanism.

---

construction position in its pre-trial motions and argued for a different claim construction in its post-trial motion for JMOL. We do not agree that Arthrex waived its current claim construction argument. Arthrex argued in favor of that claim construction at the <u>Markman</u> hearing, but the district court rejected it. When a party argues for a claim construction position at a <u>Markman</u> hearing and loses, we have held that, in general, the party is not required to continue to assert that claim construction in order to preserve its position for appeal. <u>See</u> <u>O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.</u>, 521 F.3d 1351, 1359 (Fed. Cir. 2008) ("When the claim construction is resolved pre-trial, and the patentee presented the same position in the <u>Markman</u> proceeding as is now pressed, a further objection to the district court's pre-trial ruling may indeed have been not only futile but unnecessary."). Moreover, the portion of Arthrex's post-trial argument on which S&N relies for its waiver argument is taken out of context. Arthrex did not abandon its original position with respect to claim construction. Instead, it merely made arguments within the confines of the district court's claim construction, which it was permitted to do without waiving its right to appeal. <u>See</u> <u>id.</u>

[3] Our opinion in <u>Ethicon</u> addressed only claim 1, but the court's claim construction applies equally to the remaining claims because all of the claims require lodging.

The patent discloses resiliency as that mechanism. '557 patent, col. 9, line 25. The specification states that "the intrinsic resilience of the anchor member forces the outer edges against the bone, thereby anchoring the anchor member within the hole." Id., col. 10, ll. 51-54. It is true that certain embodiments disclose the resilient force acting "in conjunction" with tension in the suture, id., col. 9, ll. 54-60, which "causes the sharp edges to dig into the bone to secure the anchor member." Id., col. 9, ll. 46-49. We held in Ethicon, however, that those passages do not reflect limitations of the claims, but merely teach a "matter of prudent surgical practice." 276 F.3d at 1310. As a result, intrinsic resiliency is the only disclosed means for lodging the anchor, and it therefore must be sufficient to lodge the anchor. Thus, "resile" must be construed to mean "to return to or tend to return to a prior or original position in a manner sufficient to cause the lodging of the member in the hole."

The prosecution history reinforces that conclusion. During prosecution, the applicant distinguished his invention from the prior art by arguing that "the '557 anchor is securely embedded simply upon pressing it into the hole where it resiles into the . . . bone, and . . . no further manipulation of the anchor is necessary." See Ethicon, 276 F.3d at 1309.

S&N contends that lodging, as construed in Ethicon, requires that the anchor be ready to secure tissue to the bone. Based on that assertion, S&N argues for a multi-tiered approach to lodging, in which resilience "plays only a part." Under S&N's construction, the resilient arms initially hold the anchor in the bone, and a later tensioning step sets the anchor so that it is ready to secure tissue to the bone.

There are several flaws in that construction. First, it conflicts with our holding in Ethicon that the claims do not require tensioning. Second, there is no support for a construction of "lodging" that requires multiple steps. S&N points to other elements, such as barbs, which "dig into the bone to supplement the anchoring effect of the legs." '557 patent, col. 9, ll. 48-49. But besides the fact that the barbs appear in only one embodiment, the specification makes clear that their role is supplemental. The portion of the specification that precedes the discussion of the barbs demonstrates that the anchor lodges in the bone without that reinforcement. See '557 patent, col. 9, ll. 42-48. Because the district court's claim construction was erroneous, and because the error could have affected the jury's verdict of infringement, we reverse the judgment for S&N.

Arthrex argues that in light of the claim construction we have adopted, the district court should be instructed to enter judgment of noninfringement in Arthrex's favor. We disagree. Reasonable jurors could find infringement even under the revised claim construction. For example, the push-out tests submitted by S&N suggested that resilience itself creates 7.5 pounds of resistive force in the accused anchors. A reasonable juror could find that amount of resistive force to be sufficient to lodge the anchor in the bone. Therefore, notwithstanding our decision as to claim construction, we decline to direct the entry of judgment of non-infringement in Arthrex's favor.

III

Arthrex contends that the district court erred by granting summary judgment with respect to its counterclaim that the asserted claims of the '557 patent are invalid. The court rejected Arthrex's argument that the '557 patent is invalid for double patenting in view of claim 25 of U.S. Patent No. 5,037,422 ("the '422 patent"), which issued to Dr.

Hayhurst. The court also rejected Arthrex's arguments that the '557 patent is anticipated by an article by Perthes and that the combination of Perthes and U.S. Patent No. 4,462,402 ("the '402 patent") to Burgio renders the '557 patent obvious.

Double patenting presents a question of law, which this Court reviews de novo. Georgia-Pacific Corp. v. U.S. Gypsum Co., 195 F.3d 1322, 1326 (Fed. Cir. 1999). Obviousness-type double patenting is a judicially created doctrine that prevents a patentee from extending the term of a patent by patenting an obvious variation on the original invention. Id. Under that doctrine, a later patent claim is not patentable over an earlier patent claim if the later claim is anticipated by, or obvious in light of, the earlier claim. Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 968 (Fed. Cir. 2001).

In this case we construe the claims of both the '557 patent and the '422 patent and compare the claims to see whether the differences are patentably distinct.[4] The '422 patent describes a suture anchor with resilient walls that are compressed when the anchor is inserted into a hole in the bone. However, claim 25 of the '422 patent is dependent on claim 22, which explicitly requires "pulling on the portion of suture material" to lodge the anchor. Moreover, the specification of the '422 patent teaches that the anchor lodges only after tension is applied. For example, the specification states that only "[u]pon application of tension" do the wall edges move "into the sides of the bore hole and grip[] the bore hole. This causes the first and second resilient walls to expand outwardly firmly locking the bone anchor in place." '422 patent, col. 3, ll. 58-61;

---

[4] We apply the one-way test for double patenting because the '557 patent came from multiple continuations-in-part, which means that the Patent and Trademark Office was not solely responsible for the delay in issuing the patent. See Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 969 n.7 (Fed. Cir. 2001); see also In re Berg, 140 F.3d 1428, 1432 (Fed. Cir. 1998).

see also id., col. 4, ll. 60-65. Designing the anchor to lodge without requiring tension, as claimed in the '557 patent, is patentably distinct from the claims of the '422 patent. Therefore, the district court did not err in upholding the validity of the '557 patent.

With respect to Arthrex's anticipation and obviousness claims, Perthes discloses a staple to which a suture is attached. Pilot holes are drilled in the bone, and the staple legs are then inserted through the pilot holes and into the bone. Perthes, however, fails to disclose resiliency in the anchor legs sufficient to lodge the anchor in the bone. Arthrex points to the testimony of Drs. Pruitt and Hayes in support of its contention that the Perthes staple is resilient, but it is clear that any resiliency in the Perthes staple is not sufficient to lodge the anchor. Accordingly, Perthes does not anticipate the '557 patent.

The Burgio patent discloses medical implants that are inserted into a bone in the ear and are designed to hold an electrode above the surface of the bone. Arthrex argues that Figures 6 and 13 of Burgio supply the elements that are missing from Perthes. Like Perthes, however, the Burgio figures do not disclose resiliency that is sufficient to lodge an anchor.

Figure 6 discloses a barb that "can be resiliently deflected . . . by the walls of the socket." '402 patent, col. 6, ll. 10-13. But the barb has "a rounded tip so that the anchor can be pulled from the socket." Id., col. 6, ll. 13-15. The district court's construction of "lodging," which was not appealed by either party, requires that the anchor, "once pressed into the hole, may not be removed." Because the anchor disclosed in Figure 6 is specifically designed to be removed, the resiliency of the barb cannot be sufficient to lodge the anchor, as required by the '557 claims. In addition, Burgio teaches that the

anchor must be rotated in order for it to be secured. Rotation is necessary to move the barb "out of alignment with any groove it formed in the wall defining the socket as it was inserted." Id., col. 3, ll. 42-45. By contrast, as we stated in Ethicon, the '557 patent specifically excludes a device in which "manipulation beyond pressing" is needed to secure the anchor. 276 F.3d at 1310. Thus, Figure 6 fails to disclose the lodging limitation.

Figure 13 of Burgio shows an anchor with two resilient arms. The arms, however, are designed to collapse inwards so as to secure a wire that is inserted between the two arms when the anchor is inserted into the hole. '402 patent, col. 9, ll. 37-45. Because the arms collapse inwards to secure the wire that is placed between them, that embodiment of Burgio does not teach the use of resilience to lodge the anchor in the hole. As the lodging limitation is not disclosed by either figure of Burgio, the invention is not obvious from the combination of Perthes and Burgio. The district court therefore correctly refused to hold the asserted claims invalid.

IV

Because we have reversed the judgment of infringement against Arthrex, it is not necessary to address Arthrex's additional arguments challenging that judgment. Because we remand for a new trial, we dismiss S&N's cross-appeal as moot.

Each party shall bear its own costs for this appeal.