James E. WRIGHT, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 94–1084C.

United States Court of Federal Claims.

May 1, 2003.

Martin H. Freeman and Mark A. Freeman, Rockville, MD, for plaintiff.

Robert G. Hilton, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant, with whom were Vito J. DiPietro, Director; and Robert D. McCallum, Jr., Assistant Attorney General. Grace Obermann, of counsel.

## OPINION

DAMICH, Chief Judge.

## I. Introduction

The matter before the Court is Plaintiff James E. Wright's Motion for Attorneys' Fees and Other Expenses under 28 U.S.C. § 1498(a), 28 U.S.C. § 2412 (Equal Access to Justice Act, or EAJA), and Rule 54(d)(1)–(2) of the Rules of the Court of Federal Claims (RCFC). For the reasons set forth herein, Plaintiff's motion is hereby DENIED.

## II. Background

United States Patent No. 4,768,417 (the '417 patent) was issued to Plaintiff on September 6, 1988. Its single independent claim was directed toward a detonator net weapon designed to explode upon ignition, thereby damaging an enemy object. *Wright v. United States*, 53 Fed.Cl. 466, 468 (2002) (*Wright II*). Plaintiff developed a proposal for a rocket-deployed explosive net for clearing mines utilizing the apparatus claimed by the '417 patent. *Id.* at 469. Plaintiff presented his proposal to various Navy and Marine offices between 1988 and 1991. *Id.* at 468–69. In 1991, the Navy had expressed a desire to solve shallow water mine-clearing and surf zone mine-clearing problems. Plaintiff submitted three additional proposals for solving the problem by utilizing his patented invention. *Id.* at 469. In March 1992, the Government (Defendant) told Plaintiff that it would be developing a system in-house and that Plaintiff's proposal would no longer be considered. *Id.*

Plaintiff then offered Defendant a license for use of the '417 patent, which was rejected by Defendant. *Id.* Defendant maintained that the independent claim in Plaintiff's patent was invalid based on prior art not previously disclosed. In response, Plaintiff filed a Request for Reexamination ("Request") of the '417 patent with the United States Patent and Trademark Office (USPTO). On March 10, 1994, the USPTO denied the Request, concluding that no new substantial question of patentability had been introduced by the references cited therein. *Id.* This denial affirmed the validity of the '417 patent with respect to the prior art introduced by Defendant. In April 1994, Plaintiff again offered Defendant a license, but that offer was also rejected. As a result of the repeated rejections, Plaintiff commenced the current action on December 21, 1994. *Id.*

After a lengthy period of discovery and trial, a decision on the merits was issued on February 8, 2002 wherein this Court found that the Defendant infringed the '417 patent under the doctrine of equivalents. *Wright v. United States*, 51 Fed.Cl. 638 (2002) (*Wright I*). More specifically, the Court found that of the four limitations in the claim, three were literally present in the accused device, while the fourth limitation was satisfied by the function-way-result test established by the Supreme Court in *Warner–Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39–40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). The Court then issued a decision on August 28, 2002, awarding Plaintiff damages in the amount of $704,125.04. *Wright II*, 53 Fed.Cl. 466 (2002), *amended by Wright v. United States*, No. 94–1084C, Order (Nov. 20, 2002).

## III. Discussion

### A. Attorneys' Fees Under 28 U.S.C. § 1498

In its motion, Plaintiff seeks attorneys' fees in the amount of $238,231.50 and expert witness fees in the amount of $44,369.67. Under 28 U.S.C. § 1498, prevailing parties in a section 1498 action against the government are entitled to reasonable and entire compensation, including reasonable fees for attorneys and expert witnesses in some circumstances. Section 1498 was amended in 1996 to provide for these fees and reads in relevant part:

Reasonable and entire compensation shall include the owner's reasonable costs, including reasonable fees for expert witnesses and attorneys, in pursuing the action if the owner is an independent inventor, a nonprofit organization, or an entity that had no more than 500 employees at any time during the 5 year period preceding the use or manufacture of the patented invention by or for the United States. Notwithstanding the preceding sentences, unless the action has been pending for more than 10 years from the time of filing to the time that the owner applies for such costs and fees, reasonable and entire compensation shall not include such costs and fees if the court finds the position of the United States was substantially justified or that the circumstances make an award unjust.

28 U.S.C. § 1498(a). It is not entirely clear from Plaintiff's motion as to whether it seeks fees and expenses under 28 U.S.C. § 1498, the EAJA, or both. Technically, Plaintiff should be seeking these fees under section 1498 and the Court should only award appropriate fees and expenses under the same. The difference, however, is somewhat immaterial because the Court employs the same analysis for awarding fees and expenses under section 1498 as it would have under the EAJA. *Gargoyles, Inc. v. United States,* 45 Fed.Cl. 139, 146 n. 7 (1999) (J. Margolis). Moreover, because of the similarity in the language prescribing the award of fees and expenses between section 1498 and the EAJA, case law interpreting the EAJA will be viewed by the Court as authority for interpreting the fee and expenses portions of section 1498.

Under 28 U.S.C. § 1498(a), if an action has been pending for more than 10 years, a prevailing Plaintiff is entitled to fees and costs regardless of whether the position of the government was substantially justified. This action, filed in December 1994, has not reached the 10–year threshold. As a result, in order to recover fees and expenses, Plaintiff must show that Defendant's position was not substantially justified and that special circumstances do not make an award unjust. 28 U.S.C. § 1498(a).

**B. Was Defendant's Position Substantially Justified?**

 The government bears the burden of demonstrating that its position was substantially justified. *Doty v. United States,* 71 F.3d 384, 385 (Fed.Cir.1995). In considering the position of the government, the Court will view the entirety of its conduct, including action or inaction by the agency prior to the commencement of litigation. *Comm'r Immigration & Naturalization Serv. v. Jean,* 496 U.S. 154, 158, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990); *Chiu v. United States,* 948 F.2d 711, 715 (Fed.Cir.1991). In order for a position to be substantially justified, it must have a reasonable basis in both law and fact. *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). Thus, the relevant inquiry is whether the government has demonstrated that the positions it took during the case, including those taken by the agency beforehand, were such that a reasonable person could conclude that its position was correct.

**1. Pre-lawsuit conduct and litigation position prior to DET delivery**

 Plaintiff argues that Defendant's conduct prior to the filing of this lawsuit was not substantially justified. Plaintiff argues that Defendant simply took the invention embodied in the '417 patent and was unwilling to pay any royalty because it believed the patent was invalid. Defendant alleged that the patent was granted only because certain prior art had not been disclosed to the patent office. In Defendant's view, the patent was invalid because this undisclosed prior art described the invention claimed in the '417 patent. Plaintiff requested a reexamination of the patent and disclosed the prior art to the patent office in its request. The request was denied because the newly disclosed art failed to raise any new substantial question of patentability. Still, Defendant refused to take a license from Plaintiff.

Defendant notes correctly that throughout the time that Plaintiff sought a license, no infringement was taking place. Moreover,

the record indicates that Defendant did not definitively decide to use the infringing technology until sometime in 1997. Prior to that time, Defendant was merely considering Plaintiff's invention as one of several possible solutions to its shallow water mine-clearing problem. Thus, Defendant had no reason to take a license in Plaintiff's patent prior to 1997. It was also reasonable for Defendant to tell Plaintiff that it believed the patent to be invalid due to undisclosed prior art. That Defendant was ultimately incorrect in its assertion as to validity does not make its position unreasonable. Finally, as Defendant points out, at the time the case was filed and even up to three years subsequent, Defendant had not infringed the patent. Because a patentee is not entitled to compensation before an infringing unit is manufactured or used, Defendant was substantially justified in its litigation position prior to DET delivery.

### 2. Litigation position subsequent to DET delivery

Subsequent to DET delivery, however, the reasonableness of Defendant's position is less certain. Because of the pending lawsuit, it was surely aware of the existence of Plaintiff's patent. Moreover, because of the pendency of the instant suit, Defendant was also aware of the claimed subject matter of the '417 patent. Nevertheless, Defendant took delivery of the DET system and continued to allege non-infringement despite evidence that the DET system did infringe the patent. Defendant presents several arguments as to why its conduct was reasonable subsequent to DET delivery.

Defendant first argues that the Court found at least one infringement issue difficult, confirming the reasonableness of its position at trial. *Wright I*, 51 Fed.Cl. at 643 ("[t]he more difficult issue for the Court is whether the clamps that the Court defines as packages control detonation as opposed to

merely facilitating the transfer of detonation"). This argument is not convincing. Defendant misconstrues what the Court wrote in the infringement opinion.[1]

Defendant further argues that the necessity of the application of the doctrine of equivalents to find infringement further demonstrates the reasonableness of its position at trial. This position is untenable. Whether infringement occurs literally or under the doctrine of equivalents, it is still infringement. The nature of infringement found by the Court does not necessarily indicate the reasonableness of an infringement defense.[2]

Defendant also argues that because section 1498 entitles the government to use a patented invention first and to subsequently sort out liability issues, its position subsequent to delivery of the DET was reasonable. As discussed above, Plaintiff is only entitled to compensation *after* the manufacture or use of its invention, which means that it cannot ever enjoin the government from practicing the invention. If the Court were to adopt Defendant's position, the government's position would always be substantially justified in section 1498 patent cases because in each section 1498 case, the infringement occurs first and liability is determined later. Such a construction of section 1498 is plainly incorrect.

Defendant's fourth argument, however, is more compelling. It correctly points out that Plaintiff's proposals for licensing terms were considerably higher than what the Court found to be an appropriate damage award. For example, Plaintiff asked for an up-front royalty payment of $1.3 million to $1.5 million. The Court ultimately awarded Plaintiff an up-front royalty payment of $250,000. Plaintiff also sought a royalty base that included all costs related to devices such as launch controllers and trainers, research and

---

1. The Court noted that in comparison to the other infringement issues, it was more difficult to decide whether the clamps defined as packages controlled detonation or merely facilitated the transfer of detonation. The Court did not say that the issue was particularly difficult, only more difficult than the others.

2. Just as there can be both easy and difficult literal infringement issues, some issues of equiva-

lence can be close and others not as close. The limitation in question was a means to ignite the detonator cord. Both the initiation clamps and the fuse assembly in the DET system achieved an identical result (ignition of the detonator cord) by performing a substantially similar function (releasing intense heat) in a substantially similar way (by reacting the detonator cord) as called for in claim 1(d) of the '417 patent.

development costs and the cost of future infringing devices that Defendant intended to manufacture or use. The Court found that an appropriate royalty base should include only those units that actually infringed the patent, a considerably smaller figure. Over-all, Plaintiff sought almost $6.9 million in damages, while the Court ultimately awarded it less than one-half million dollars. In choosing not to settle the case by taking out a license, Defendant actually saved a considerable amount of money. The fact that Plaintiff asked for so much money up-front lends considerable support to Defendant's claim that it was reasonable not to take a license and to litigate the claim. Even though it did not have a strong case on liability, the noninfringement arguments presented by Defendant at trial, although ultimately unpersuasive, were not unreasonable in law or fact.

### 3. Totality of the circumstances

Viewing Defendant's conduct in its entirety, the Court finds that Defendant's positions as a whole were substantially justified. Although Defendant's litigation position was not particularly strong and ultimately incorrect, it was a reasonable one. Moreover, Defendant's refusal to take a license prior to the suit being filed was justified, as it was not (at that time) infringing the patent, nor had it firmly decided to utilize a system that would infringe Plaintiff's patent. Finally, in view of the fact that Plaintiff demanded licensing fees significantly greater than the ultimate award, the Court finds that Defendant's refusal to settle the case subsequent to taking delivery of the infringing DET system was reasonable.

### IV. Conclusion

Because Defendant's position in this case was substantially justified, Plaintiff's Motion for Attorneys' Fees and Other Expenses is hereby DENIED.