**NOMOS CORPORATION, Plaintiff and Counter–Defendant,**

v.

**ZMED, INC., Defendant and Counter–Claimant.**

**No. 01–CV–10765–MEL.**

United States District Court, D. Massachusetts.

Sept. 26, 2002.

Order Modifying Decision Sept. 26, 2002.

Martin J. O'Donnell, Michael E. Attaya, Cesari & McKenna, LLP, Boston, MA, Samer Al–Azem, McGlinchey Stafford, P.L.L.C., Houston, TX, Clarence E. Eriksen, Jackson, Walker, LLP, Houston, TX, for Plaintiff.

Michael J. Bettinger, Timothy P. Walker, Anup Tikku, Preston and Gates, San Francisco, CA, Callie A. Bjurstrom, Peter

K. Hahn, Luce, Forward, Hamilton & Scripps, LLP, San Diego, CA, Stephanie E. Kish, Luce, Forward, Hamilton & Scripps, LLP, San Diego, CA, Daniel P. Tighe, Griesinger, Tighe & Maffei, LLP, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

LASKER, District Judge.

This patent case concerns competing devices designed to increase the accuracy with which organs and lesions inside the human body can be located, and in turn, to improve the effectiveness of radiation treatment.

NOMOS Corporation is the owner of United States Letters Patent 5,411,026 (the '026 patent) and the manufacturer of a commercial embodiment of the '026 patent known as the BAT System. ZMED, Inc., produces a device called the SonArray System, a commercial embodiment of United States Letters Patent 5,447,154 (the '154 patent). NOMOS sues ZMED, claiming the SonArray System infringes the '026 patent; ZMED countersues NOMOS, claiming the BAT System infringes the '154 patent.

Previously, both parties moved for partial summary judgment; the motions were denied without prejudice to renew. On June 26, 2002, I filed a Markman decision which construed the two patents at issue. NOMOS now moves for partial summary judgment of non-infringement as to the '154 patent. ZMED, in turn, moves for summary judgment of non-infringement as to the '026 patent.

### I. NOMOS's Motion

NOMOS seeks partial summary judgment that the '154 patent has not been infringed by NOMOS's BAT System. In support of its contention, NOMOS draws attention to the earlier Markman decision, which construed both claims 1 and 10 of the '154 patent as including the step of "using the second imaging device (e.g., the ultrasound probe that takes two-dimensional images) to make a three-dimensional rendering showing the organ." NOMOS asserts that the BAT System includes no such step, and that instead its device works in the following manner:

> prior to operation of the BAT System ... two-dimensional ("2D") cross-sectional images of an organ of the patient are obtained by an MRI or computed tomography ("CT") imaging device. Based on the 2d MRI or CT scan images, a radiation therapy treatment plan is developed .... 2D cross sectional images of the organ are contoured (outlined) to illustrate the boundaries of the areas to be treated. These contours are 2D outlines of the organ traced off of the 2D MRI or CT images and are electronically imported into the BAT System prior to radiation therapy treatment of the patient.

(NOMOS Memorandum in Support of its Summary Judgment Motion, 2).

NOMOS argues that because the BAT System lacks the entire claim element included in the '154 patent, the step of using 2D ultrasound images to generate a 3D rendering as called for in claim elements 1(d) and 10(d), it does not infringe the '154 patent, either literally or under the doctrine of equivalents. There is no literal infringement because the BAT System, when operated, does not include every element exactly as recited in claim 1 or claim 10: it does not generate or utilize a 3D second rendering.

NOMOS notes that the doctrine of equivalents does not apply here, because the doctrine cannot be used to recapture unclaimed subject matter or to eliminate a claim element. Because claims 1 and 10 of the '154 patent have been construed to include the element of creating a 3D second rendering, which the BAT System does not include, NOMOS concludes that

the BAT System does not infringe on the '154 patent.

ZMED counters that the BAT System infringes on the '154 patent by combining 2D images from the ultrasound probe to make a 3D rendering. In support, ZMED quotes NOMOS's expert, Steven Eisenbarth, who, in deposition, acknowledged that at some point in the BAT System's process it combines two (preferably perpendicular) 2D ultrasound images to determine the 3D position of the organ.[1]

ZMED next charges that the BAT System manual refers to the combination of the two ultrasound images as a "3D volume." It follows, ZMED argues, that the testimony of Eisenbarth and the BAT System user manual admit or concede that the device contains the second 3D rendering, and that it literally infringes claims 1 through 10 of the '154 patent. Alternatively, ZMED opposes NOMOS's motion for non-infringement under the doctrine of equivalents.

■ NOMOS's motion for partial summary judgment is granted. The Markman Order construed claims 1 and 10 of the '154 patent as including the step of "using the second imaging device . . . to make a three dimensional rendering showing the organ." The Bat System captures 2D ultrasound images, each in separate views, on the BAT System console, but it does not create a 3D rendering from 2D ultrasound images and match this rendering to the 3D rendering created from CT contours. As NOMOS physically demonstrated at the motion hearing, the BAT System does not make a "loaf of bread,"

only a "slice." The BAT System, when operated, does not infringe on the '154 patent because it lacks the step of "using the second imaging device . . . to make a three-dimensional rendering showing the organ," that is required in the '154 patent, according to the Markman Order.

## II. ZMED's Motion for Summary Judgment

ZMED moves for summary judgment of non-infringement of NOMOS's '026 patent. Confusion exists as to which version of the SonArray System is the subject of this case. NOMOS filed its patent infringement case against ZMED in May 2001, shortly after spotting the "alpha" version of the SonArray System at a machine exposition. The alpha version of the SonArray System included a "snake-arm." Five of these machines were distributed by ZMED for an experimental testing program. ZMED since has made some significant changes in its presently manufactured "commercial" version of the SonArray System, which has discontinued the use of a snake-arm. Because the posture of the alpha version therefore differs from that of the commercial version, they are treated separately below.

### A. The Commercial Version

ZMED moves for summary judgment of non-infringement of the '026 patent, on the grounds that its commercial version of the SonArray System does not infringe on the '026 patent. ZMED argues that the SonArray System: "(a) does not have an ultrasound probe mounted to the treat-

---

1. At the motion hearing on September 5, 2002, NOMOS's counsel pointed out that the statements of Eisenbarth that ZMED relies on as proof that the BAT System does include a step performing a 3D rendering were not actually referring to this particular point of the patient's therapy treatment. Furthermore, on August 19, 2002, Eisenbarth filed a declaration that emphasizes (1) that the BAT System does not combine 2D ultrasound images into a 3D rendering and (2) that the quote from the BAT System user manual refers to the "fact that adjustments to position in one 2D ultrasound view will effect the second 2D ultrasound view."

ment table; (b) does not have an ultrasound probe in contact with and supported by the treatment table; and (c) does not use computer software to draw a line around the ultrasound image of the surface of the lesion." (ZMED's Memorandum in Support of its Motion at 1).

First, ZMED argues that there is no issue of material fact that the required element of an ultrasound probe mounted to the treatment table is missing from ZMED's commercial SonArray System. ZMED relies on the Markman Order's construction of claims 1 through 5 of the '026 patent, which required an ultrasound probe that is "mounted to the table by means of a bracket or fixation device." The commercial version of the SonArray System collects data by using a hand-held, unsecured, unmounted ultrasound probe, compared to the '026 patent which, according to the Markman Order, employs a conventional ultrasound probe that "generates a two-dimensional ultrasound image mounted to the treatment table by means of a bracket or fixation device (and equivalents thereof)." Given this difference, ZMED asserts that the commercial SonArray System does not literally infringe on the '026 patent or dependent claims 2 through 5.

Second, ZMED argues that there is no issue of fact that the ultrasound probe of the commercial SonArray System does not satisfy claims 1 through 5 of the '026 patent under the doctrine of equivalents. ZMED contends that the SonArray System does not operate in the same "way" to produce the same "result" as the ultrasound probe of the '026 patent. Instead, the commercial SonArray System uses software to correct for free-hand movements of the hand-held ultrasound probe, and there is no bracketed device as is required in the '026 patent.

ZMED asserts further that in light of the Markman Order there is no issue of

material fact that the commercial SonArray System does not satisfy the required elements of claims 6 through 20 of the '026 patent. ZMED reiterates its argument above, that the SonArray System does not include the required element of an ultrasound probe that is in contact with and supported by the treatment table, unlike the '026 patent as construed by the Court. Moreover, ZMED stresses that the SonArray System does not include the computer software the Markman Order construed as required in claim 6 of the '026 patent. The '026 patent's software as disclosed in claim 6, draws a line around an ultrasound image of the surface lesion. ZMED's experts, Frank Bova and Edward Tekeian, have submitted opinions to the Court that the SonArray method does not include outlining or identifying the ultrasound image of the surface of the lesion. Accordingly, ZMED argues that the SonArray System does not literally infringe on claims 6 through 20 of the '026 patent.

ZMED argues next that the SonArray System does not infringe claims 6 through 20 of the '026 patent under the doctrine of equivalents, because the unsecured hand-held ultrasound probe operates in a different "way" and produces a different "result" than that of the '026 patent—an ultrasound probe that is in contact with and supported by the treatment table.

NOMOS counters that whether the commercial SonArray System infringes on the '026 patent is a triable issue material fact. Although NOMOS acknowledges that the SonArray System does not use the same means for performing the claimed function of generating an ultrasound image, it stresses the contention that both parties' devices perform the same function. Thus, NOMOS characterizes ZMED's emphasis on the different "way" the ultrasound probe works as a distraction from the fact that the SonAr-

ray System, in its performance, mirrors that of the '026 patent.

NOMOS also disputes ZMED's contention that the commercial SonArray System does not infringe claim 6 of the '026 patent. Claim 6 was construed as, "placing on (in contact with and supported by) the treatment table a conventional, commercially available ultrasound probe that generates a two-dimensional ultrasound image (and its equivalent)." NOMOS argues that the commercial SonArray System's ultrasound probe, even when hand-held, is in contact with and supported by the treatment table because the body of the patient will be in contact with the table.

Finally, NOMOS disagrees with ZMED that the SonArray System's software does not infringe its '026 patent under the doctrine of equivalents. According to NOMOS, the SonArray System performs the equivalent of claim 6 step (d) of the '026 patent, because "the software copies the CT contour of a lesion and renders (draws) the outline in the ultrasound image." According to NOMOS, this step of rendering an outline around a lesion in an ultrasound image is substantially the same step as that of the '026 patent device—the BAT System.

■ ZMED's motion for summary judgment for non-infringement of the '026 patent is granted, in part, as to the commercial version of the SonArray System. The Markman decision construed claim 1 of the '026 patent to require an ultrasound probe that is "mounted to the table by means of a bracket or fixation device." This required element is not present in the commercial SonArray System. In the aftermath of the Markman Order, it is clear that the SonArray System does not literally infringe claim 1 of the '026 patent or the dependent claims 2, 3, 4, and 5.

Nor does the SonArray System include an equivalent to the disclosed structure in claim 1 (along with dependent claims 2–5)

of the '026 patent. On a claim of infringement under the doctrine of equivalents, summary judgment of non-infringement is proper when the accused device does not perform substantially the same "function," in substantially the same "way," to achieve substantially the same "result" as at least one of the claimed elements. *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1364 (Fed.Cir.2000). If any one of these factors is not present, then the accused device cannot be found to infringe.

The SonArray System functions in a different "way" and produces a different "result" from that of the '026 patent. It is undisputed that the '026 patent requires the mounting of an ultrasound probe to the table by means of a bracket or fixation device, and that the commercial SonArray System includes a substantially different, hand-held device which functions differently and produces a different result. I find that this difference is not insubstantial as a matter of law. *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303 (C.A.Fed.1998). It follows that, the commercial SonArray System does not infringe claims 1 through 5 of the '026 patent under the doctrine of equivalents.

I further find that the commercial SonArray System does not literally infringe on claims 6–20 of the '026 patent. Claim 6 of the '026 patent was construed as requiring an ultrasound probe that is "in contact with and supported by the treatment table" and to require the use of computer software "to draw a line around the image of the surface of the lesion .... in at least one of said ultrasound images." There is no dispute that the commercial version of the SonArray System does not use a bracketed or mounted ultrasound probe as discussed above. Furthermore, the computer software used by the SonArray System does not draw a line around an ultra-

sound lesion as is required in claim 6 of the '026 patent. The absence of these two required elements compel a finding of no literal infringement.

Further, Claim 6 of the '026 patent requires that an ultrasound probe is "in contact with and supported by the treatment table" yet the ultrasound probe included in the SonArray System is not secured or mounted to the treatment table in any form. This difference is not insubstantial, and the argument provided by NOMOS that the commercial SonArray System is the functional equivalent of the bracketed BAT System, by virtue of the patient's contact with the table, stretches the doctrine beyond reason.

In addition, the SonArray System lacks the capability to outline the 3D data it acquires from the ultrasound probe, unlike the '026 patent which requires the use of computer software to draw a line around the image of the surface lesion. This difference between the way the SonArray System and the BAT System function is also not insubstantial, and no reasonable jury could find it functionally equivalent.

### B. The Alpha Version

However, ZMED's motion for summary judgment of non-infringement on the '026 patent is denied as to the alpha version. This early experimental version of the SonArray System included a "snake-arm" that could be clamped down to the treatment table and hold a cradle into which the ultrasound probe could be inserted on the other end. The snake-arm satisfies the requirement of claim 1 and its dependent claims 2 through 5 of the '026 patent of being "mounted to the table by means of a bracket or fixation device." Moreover, the snake-arm found in the alpha version satisfies the requirement of claim 6 of the '026 patent which requires an ultrasound probe that is "in contact with and supported by the treatment table."

ZMED has represented that only five of the alpha SonArray Systems were distributed for experimental testing, and at oral argument counsel for ZMED conceded that the alpha version likely infringed on the '026 patent. I find that the earlier snake-arm structure of the SonArray System infringed on the '026 patent, and that a triable issue of fact remains as to the damages caused by the alpha version.

### III.

For the reasons stated above, NOMOS's motion for partial summary judgment is GRANTED. ZMED's motion for summary judgment is GRANTED IN PART and DENIED IN PART. A jury trial will commence on September 30, 2002 to determine the damages, if any, suffered by NOMOS as to the five alpha SonArray Systems distributed.

It is so ordered.

### MEMORANDUM AND ORDER MODIFYING DECISION

On September 13, 2002, I entered a summary judgment order on the parties' cross-motions for summary judgment of non-infringement. The Order granted NOMOS' motion for non-infringement of ZMED's '154 patent, and granted in part and denied in part ZMED's motion for non-infringement of NOMOS' patent, the '026 patent. ZMED's summary judgment motion was granted as to its current "commercial" embodiment of the '154 patent, the SonArray System, and it was denied in part as to the "alpha" versions of the SonArray System that are no longer in production.

Procedurally, this finding of affirmative infringement was premature, as the motions pending before the court each sought judgment of non-infringement, not infringement. Therefore, since the following finding in the decision of September 13,

2002, was not ripe for determination, it is revoked: ["I find that the earlier snake-arm structure of the SonArray System infringed on the '026 patent, and that a triable issue of fact remains as to the damages caused by the alpha version."] After the issuance of the decision, the parties have further briefed the issue of whether, as a matter of law, the alpha version of the SonArray System infringes claim 1 of the '026 patent.

## I.

ZMED contends that the alpha system did not infringe the '026 patent. ZMED draws attention the Markman construction of claim 1 which requires (a) an ultrasound probe mounted to the treatment table by means of a bracket or other fixation device; (b)(i) a means for indicating the position of the means for generating an ultrasound image must be a camera/LED system or a microphone/ultrasonic system; and (b)(ii) the system must "compare the position of the lesion in the 2D image generated by the ultrasound probe with the position of the lesion identified in the radiation therapy plan."

According to ZMED, the alpha version does not perform step (b)(ii) of Claim 1 of the '026 patent because the alpha did not compare the position of the lesion in the 2D image generated by the ultrasound probe; rather, the alpha version compared the position of the lesion in a 3D reconstruction with the position of the lesion. ZMED further stresses that this Court has previously described the SonArray System as employing "3D data it acquires from the ultrasound probe," and it argues that the 3D data acquired to create a 3D reconstruction compels a finding of non-infringement or at least there is a triable issue of fact.

## II.

NOMOS counters that, as a matter of law, ZMED's alpha version infringes the '026 patent. According to NOMOS, the alpha version did perform the step of aligning the position of the lesion in the 2D image generated by the ultrasound probe with the position of the lesion identified in the radiation therapy plan as is required by claim 1(b)(ii) of the '026 patent. NOMOS asserts that it is undisputed that the alpha version, like the '026 patent, makes comparisons between two positions of the lesion. It is also undisputed that the alpha version's ultrasound dataset acquired by the 2D ultrasound probe is a 2D ultrasound image set, according to NOMOS.

NOMOS cites an article entitled "Ultrasonic Guidance for Spinal Extracranial Radiosurgery" which describes the SonArray System's ultrasound dataset as "The ultrasonography prove is guided over the anatomical region of interest to acquire a 2D ultrasound image set that is transferred to a computer workstation by using a standard video link." (Exh. B of Eriksen Decl. at p. 2). NOMOS further argues that the fact that the alpha also adds the step of weaving together the 2D ultrasound images into a 3D rendering does not change the fact that the alpha version satisfies element (b)(ii) of claim 1.

## III.

■ I find, as a matter of law, that the alpha version of the SonArray System infringes the '026 patent, and grant summary judgment as to this issue. ZMED acknowledges that the only dispute remaining after the September 13 decision as to the alpha version's alleged infringement on the '026 patent, concerns whether the alpha version performs step (b)(ii) of Claim 1. I find that the alpha version does perform this step, since it compares the position of the lesion in the 2D image generated by the ultrasound probe with

the position of the lesion identified in the radiation therapy.

There appears to be no dispute that the alpha version makes comparisons of positions of the lesion and the position of the lesion in the ultrasound images acquired. Moreover, the evidence such as the SonArray User Manual, the "Ultrasonic Guidance" article noted above, and various other additions to the Record, further demonstrate that the alpha version, as is required by the '026 patent, "acquires" 2D ultrasound images which it crafts into a 3D rendering. The fact that the alpha version advances beyond this step to create a 3D rendering of the anatomy scanned by the ultrasound probe does not cure its violation. "Infringement arises when all of the steps of a claimed method are performed, whether or not the infringer also performs additional steps." *Smith & Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304 (Fed.Cir.2001).

Accordingly, the alpha version satisfies the element (b)(ii) of claim 1 of the '026 patent, and as described in the Markman Order and summary judgment order, the alpha version infringes on the '026 patent.

NOMOS is entitled to summary judgment on this issue.

It is so ordered.